UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-03038

FRED NEKOUEE, individually,                      :
                                                 :
            Plaintiff,                            :
                                                 :
vs.                                              :
                                                 :
TURNPIKE LODGING, LLC, a Colorado                :
limited liability company,                       :
                                                 :
            Defendant.                            :
_____/

## COMPLAINT
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, TURNPIKE LODGING, LLC, a Colorado limited liability company (sometimes referred to as "Defendant"), for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.      Defendant's property, the Hampton Inn has an address of 912 W. Dillon Road, Louisville, Colorado 80027, in Boulder County, Colorado ("Hampton Inn").

3.      Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the property.   The Defendant's property is located in and does business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis, weak limbs, and he requires the use of a wheelchair for mobility.

6.      Mr. Nekouee travels to the Longmont area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

7.      Fred Nekouee stayed at the Hampton Inn which forms the basis of this lawsuit on February 4, 2019 with a checkout on February 5, 2019.

8.      Fred Nekouee requested an accessible room.

9.      Fred Nekouee stayed in accessible room 127 at the Hampton Inn.

10.      Due to the barriers to access Fred Nekouee encountered at the Hampton Inn, Fred Nekouee is deterred from visiting the Hampton Inn to avail himself of the goods and services offered to the public there.

11.      Fred Nekouee visited the Longmont area near the Hampton Inn in early August 2018 and again on September 29, 2018 through October 3, 2018 to attend a heavy equipment auction, and he visited Rocky Mountain National Park on October 2, 2018.

12.      The Plaintiff returned to the Longmont area near the Hampton Inn on February 3-6, 2019 and again on May 7-10, 2019.

13.      Fred Nekouee attended a heavy equipment auction on May 8, 2019 in Longmont, Colorado.

14.     The Plaintiff returned to the Longmont-Louisville area and visited the Hampton Inn on October 1, 2019, but upon observation that barriers to access at the property had not been removed, he decided not to stay at this Hampton Inn on his October 2019 visit.

15.      The Plaintiff plans to return to the Longmont-Louisville area in December 2019 or March 2020 to attend a heavy equipment auction and to vacation.

16.      Hampton Inn is close to the heavy equipment auction and dealerships he visits, and it is a good hotel location from which to make day trips to Rocky Mountain National Park.

17.      The Plaintiff likes to stay at moderately-priced hotels like Hampton Inn.

18.     The Plaintiff plans to return to the Hampton Inn again if the barriers to access are removed.

19.     The Plaintiff has encountered architectural barriers at the subject property.

20.     The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, and have impaired his ability to access the property.

21.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

22.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

23.     The Plaintiff encountered and observed barriers to access in the parking lot and walking surfaces, lobby restrooms, accessible guestroom 127, the restroom in the accessible room 127, and the pool and fitness areas of the Hampton Inn.

24.     The Plaintiff encountered and observed barriers to access in the men's restroom in the lobby.

25.     The cross slope of the walking surface to the left of the main entrance (oriented as one faces the entrance) to the Hampton Inn is steeper than 1:48 and steeper than 3.1%.

26.     In the parking lot, the parking space for disabled patrons to the left of the main entrance to the Hampton Inn (oriented as one faces the main entrance) has a running slope steeper than 1:48 and steeper than 3.1%.

27.     The Plaintiff is deterred from visiting the Hampton Inn because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

28.     During his October 2019 visit to the Longmont-Louisville area, Fred Nekouee returned to the Hampton Inn, and he observed and encountered barriers to access that he had encountered before in the parking lot, access aisles and walkways, and barriers to access had not been removed.  Due to such barriers to access, Fred Nekouee is deterred from staying at the Hampton Inn.

29.     Defendant owns, leases, leases to, or operates a place of public accommodation (an inn, hotel, motel, or other place of lodging) as defined by the ADA, 42 U.S.C. § 12181(7)(A), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, the Hampton Inn.

30.     Hampton Inn is a place of public accommodation.

31.     Defendant is responsible for complying with the obligations of the ADA.

32.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 38 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

33.     Fred Nekouee desires to visit the Hampton Inn not only to avail himself of the goods

and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

34.    The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

35.    The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

36.    Preliminary inspections of the Hampton Inn show that ADA violations exist.

37.    Physical conditions at the Hampton Inn are accurately described in each romanette (i) of each lettered subparagraph of paragraph 38 below.

38.    The ADA violations that Fred Nekouee personally encountered or observed at the Hampton Inn include, but are not limited to:

**WALKING SURFACES AND PARKING**

a.    (i) In the parking lot, there are no parking spaces with a sign with the term "van accessible."   (ii) In the parking area shown in the photograph below, there are no parking spaces with a sign with the term "van accessible," in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   (iii) The Plaintiff observed this lack of van accessible signage, and it made it difficult for him to find an accessible parking space.   (iv) The action required to install van accessible signage is easily accomplishable and able to be carried out without much difficulty or expense.



b.   (i) In the parking lot to the left of the main entrance to the Hampton Inn (oriented as one faces the main entrance), the left parking space for disabled patrons (oriented as one faces the building) shown in the photograph under subparagraph (a) above has a running slope steeper than 1:48 and steeper than 3.1%.   (ii) The running slope of this parking space is steeper than 1:48 and is as steep as about 1:25.6 (3.9%), in violation of Federal Law 2010, ADAAG   502.4.   (iii) The Plaintiff encountered the running slope of this parking space in his wheelchair, and it made his wheelchair unstable.   (iv) The action required to reduce the running slope of this parking space for disabled patrons is easily accomplishable and able to be carried out without much difficulty or expense.

c.   (i) In the parking lot to the left of the main entrance to the Hampton Inn (oriented as one faces the main entrance), the left parking space for disabled patrons (oriented as one faces the building) shown in the photograph under subparagraph (a) above has a cross slope

steeper than 1:48 and steeper than 3.1%.   (ii) The cross slope of this parking space is steeper than 1:48 and is as steep as about 1:26.3 (3.8%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered the cross slope of this parking space in his wheelchair, and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this parking space for disabled patrons is easily accomplishable and able to be carried out without much difficulty or expense.

d.   (i) In the parking lot to the right of the main entrance (oriented as one faces the main entrance), the parking space for disabled patrons shown in the photograph below has a change in level of more than 0.5 inches.   (ii) This parking space for disabled patrons has a change in level of more than 0.5 inches and a change in level of greater than about 1 inch, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   (iii) The Plaintiff encountered this change of level in his wheelchair, and he required assistance to move out of the depression in the surface.   (iv) The action required to reduce the change in level in this parking space for disabled patrons is easily accomplishable and able to be carried out without much difficulty or expense.



e.    (i) In the parking lot, the running slope of the front section (closer to the sidewalk) of the access aisle to the right of the main entrance (oriented as one faces the entrance) has a running slope steeper than 1:48 and steeper than 3.1%.   (ii) The running slope of the front section of this access aisle shown in the photograph below is steeper than 1:48 and is as steep as about 1:27.8 (3.6%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this running slope in this access aisle, and it made his wheelchair unstable and made it difficult for him to ascend the walkway toward the access ramp.   (iv) The action required to reduce the running slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.



f.   (i) The cross slope of the walking surface toward the hotel side door is steeper than 1:48 and steeper than 3.1%.   (ii) The cross slope of the walking surface toward the hotel side door is steeper than 1:48 and is as steep as about 1:27 (3.7%), in violation of Federal Law 2010, ADAAG § 403.3.   (iii) While moving in his wheelchair, the Plaintiff encountered the cross slope of this walking surface, and it made his wheelchair unstable. (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

g.   (i) The cross slope of the walking surface to the left of the main hotel entrance (oriented as one faces the main entrance) is steeper than 1:48 and steeper than 3.1%.   (ii)

The cross slope of the walking surface to the left of the main hotel entrance (oriented as one faces the main entrance) is steeper than 1:48 and is as steep as about 1:18.2 (5.5%), in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The Plaintiff encountered this steep cross slope of this walking surface while moving in his wheelchair, and the cross slope made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense,

h.   (i) The running slope of the access ramp in to the right of the main hotel entrance (oriented as one faces the main entrance) shown in the photographs below is steeper than 1:12 and steeper than 9.4%.   (ii) The running slope of this access ramp is steeper than 1:12 and steeper than 11%, in violation of Federal Law 2010, ADAAG § 405.2.   (iii) Due to this steep running slope of this access ramp, the Plaintiff required assistance to ascend and descend this access ramp while moving in his wheelchair, and this steep running slope made his wheelchair unstable.   (iv) The action required to reduce the running slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.





    i.    (i) The access ramp shown in the photographs in subparagraph (h) above does not have a landing at the top of the ramp run.   (ii) The access ramp shown in the photographs below subparagraph (h) above does not have a landing at the top of the ramp

run, in violation of Federal Law 2010, ADAAG §§ 405.7 and 405.7.1.   (iii) The Plaintiff encountered this access ramp while moving in his wheelchair, and the lack of a landing at the top of this ramp made maneuvering toward the entrance very difficult and made his wheelchair unstable, and he required assistance to move toward the entrance in his wheelchair.   (iv) The action required to make a landing at the top of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.

j.   (i) The slope of the curb sides or flares of the access ramp shown in the photograph in subparagraph (a) above, are steeper than 1:10 (10%) and steeper than 11%.   (ii) The slope of these curb ramp sides or flares are steeper than 1:10 (10%) and steeper than 18%, in violation of Federal Law 2010, ADAAG § 406.3.   (iii) The Plaintiff encountered these curb ramp sides to this access ramp and he had difficulty maneuvering his wheelchair to avoid overturning his wheelchair on their steep slopes.   (iv) The action required to reduce the slope of these curb ramp sides is easily accomplishable and able to be carried out without much difficulty or expense.

k.   (i) The access ramp shown in the photograph in subparagraph (a) above does not have a landing at the top of the ramp run.   (ii) The access ramp shown in the photograph in subparagraph (a) above does not have a landing at the top of the ramp run, in violation of Federal Law 2010, ADAAG §§ 405.7 and 405.7.1.   (iii) The Plaintiff encountered this access ramp while moving in his wheelchair, and the lack of a landing at the top of this ramp made maneuvering toward the entrance very difficult and made his wheelchair unstable, and he required assistance to move toward the entrance in his wheelchair.   (iv) The action required to make a landing at the top of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.

l.   (i) The access ramp to the left of the main entrance (oriented as one faces the entrance) shown in the photograph below does not have a landing at the top of the ramp run.   (ii) This access ramp does not have a landing at the top of the ramp run, in violation of Federal Law 2010, ADAAG §§ 405.7 and 405.7.1.   (iii) The Plaintiff encountered this access ramp while moving in his wheelchair, and the lack of a landing at the top of this ramp made maneuvering toward the entrance very difficult and made his wheelchair unstable, and he required assistance to move toward the entrance in his wheelchair.   (iv) The action required to make a landing at the top of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.



m.   (i) The transition from the access aisle serving the parking spaces for disabled patrons to the walking surface on the right side of the main entrance (oriented as one faces the entrance) has a change of level greater than 0.5 inches.   (ii) The transition from this access aisle to this walking surface has a change of level greater than 0.5 inches and as steep as about 1 inch, in violation of Federal Law 2010, ADAAG §§ 303.3 and 405.4.   (iii)

While moving in his wheelchair, the Plaintiff encountered this change of level, and it stopped the forward movement of his wheelchair.  The Plaintiff required assistance to move his wheelchair over this change of level.  (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.

**LOBBY COUNTER**

n.    (i) The counter surface in the lobby is higher than 36 inches above the floor.  (ii) The counter surface in the lobby is higher than 36 inches above the finish floor and as high as about 45 inches above the finish floor, and a portion of the counter that is 36 inches high maximum above the finish floor is not provided, in violation of Federal Law 2010, ADAAG § 904.4.1.  (iii) Due to the height of the counter surface above the floor, the Plaintiff had difficulty looking at paperwork on the counter and could not read the screen on the card reader on the counter from his wheelchair.   (iv) The action required to provide a portion of the counter surface in the lobby that is 36 inches long minimum and 36 inches high maximum above the finish floor is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN THE LOBBY**

o.    (i) The force needed to open the door to the men's restroom in the lobby is more than 5 pounds.   (ii) The force required to open this door is about 10 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9.   (iii) The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he required assistance to open this door.   (iv) The action

required to reduce the force necessary to open this door is easily accomplishable and able to be carried out without much difficulty or expense.

p.  (i) In the men's restroom in the lobby, the accessible toilet stall is less than 60 inches wide.  (ii) This accessible toilet stall is only about 33 inches wide since it is blocked by the side panel of the sink and is less than the required width of 60 inches, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.  (iii) Due to the location of the sink in the accessible toilet compartment, the Plaintiff could not reach the flush control on the toilet from his wheelchair.  (iv) The action required to provide an accessible toilet compartment that is 60 inches wide minimum is easily accomplishable and able to be carried out without much difficulty or expense.

q.  (i) In the men's restroom in the lobby, the rear wall grab bar is less than 36 inches long.  (ii) This rear wall grab bar is less than 36 inches long and is only about 24 inches long, in violation of Federal Law 2010, ADAAG § 604.5.2.  (iii) Due to the short length of this rear wall grab bar, the Plaintiff had difficulty using the rear wall grab bar to transfer himself from his wheelchair to the toilet.  (iv) The action required to install a rear wall grab bar that is 36 inches long minimum is easily accomplishable and able to be carried out without much difficulty or expense.

r.  (i) In the men's restroom in the lobby, the side wall grab bar does not extend at least 54 inches from the rear wall.  (ii) This side wall grab bar does not extend the required minimum of 54 inches from the rear wall and only extends about 48 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.  (iii) Due to the lack of proper extension from the rear wall, the Plaintiff had difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again.  (iv)  The action required

to install a side wall grab bar of proper length that extends a minimum of 54 inches from the rear wall is easily accomplishable and able to be carried out without much difficulty or expense.

s.   (i) In the men's restroom in the lobby, the centerline of the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of this toilet paper dispenser is not located between 7 and 9 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

t.   (i) In the men's restroom in the lobby, the paper towel dispenser outlet is higher than 48 inches above the floor.   (ii) This paper towel dispenser outlet is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) The Plaintiff tried but could not reach a clean paper towel from this dispenser's outlet due to its height above the floor. (iv) The action required to relocate this paper towel dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

u.   (i) In the men's restroom in the lobby, the coat hook is higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the floor and is as high as about 70 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff observed the height of this coat hook above the floor and outside of his reach range from his wheelchair, and it deters him from wanting to stay at the Hampton Inn.

**BREAKFAST AREA**

v.   (i) In the breakfast area, the dispenser keys to the juice machine, the water dispenser lever, the waffle maker handle, and the basket for oranges are all higher than 48 inches above the floor.   (ii) In the breakfast area, the dispenser keys to the juice machine, the water dispenser lever, the waffle maker handle, the basket for oranges, and the top most container for pastries are all higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) The Plaintiff tried but could not reach the dispenser keys to the juice machine to serve himself juice, the water dispenser lever to serve himself water, the waffle maker handle to make himself a waffle, the oranges, and the pastries due to their height above the floor.   (iv) The action required to relocate or replace these dispensers and containers is easily accomplishable and able to be carried out without much difficulty or expense.

**ACCESSIBLE GUESTROOM 127**

w.   (i) The force needed to open the door to accessible guestroom 127 is more than 5 pounds.   (ii) The force required to open this door exceeds the maximum allowed force of 5 pounds (22.2 N) and is about 12 pounds, pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9. (iii) The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he required assistance to open this door.   (iv) The action required to reduce the force necessary to open this door is easily accomplishable and able to be carried out without much difficulty or expense.

x.   (i) In accessible guestroom 127, the security latch for the entrance door is higher than 48 inches above the floor.   (ii) This security latch is higher than 48 inches above the

finish floor and is as high as about 60 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to its height above the floor, the Plaintiff tried but could not close this security latch.   (iv) The action required to lower this security latch is easily accomplishable and able to be carried out without much difficulty or expense.

y.   (i) The time for the entrance door to accessible guestroom 127 to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The time for the entrance door to accessible guestroom 127 to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds and about 3 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) The Plaintiff encountered this condition while moving in his wheelchair, and due to the short elapsed time for this door to close from an open position of 90 degrees, the Plaintiff required assistance to enter this room.   (iv) The action required to adjust the closing time of this door is easily accomplishable and able to be carried out without much difficulty or expense.

z.   (i) In accessible guestroom 127, the operation of the window latch requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of this window latch requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG § 309.4.   (iii) The Plaintiff tried but could not operate this window latch with a closed fist or loose grip.   (iv) The action required to replace this window latch is easily accomplishable and able to be carried out without much difficulty or expense.

aa.   (i) In accessible guestroom 127, the iron holder for the iron in the wardrobe   is installed higher than 48 inches above the floor.   (ii) This iron holder for the iron is installed higher than 48 inches above the finish floor and as high as about 55 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal

Law 2010, ADAAG § 308.2.   (iii) From his wheelchair, the Plaintiff tried but could not reach this iron.   (iv) The action required to lower the iron holder is easily accomplishable and able to be carried out without much difficulty or expense.

bb.   (i) In accessible guestroom 127, the light switch near the entrance door is higher than 48 inches above the floor.   (ii) This light switch is higher than 48 inches above the finish floor and is about 51 inches above the finish floor, outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) The Plaintiff tried but could not operate this light switch from his wheelchair.   (iv) The action required to relocate this light switch is easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i) In accessible guestroom 127, the night stand light switch, the keys to operate the microwave, and the low end of the drapery rod pull are all higher than 48 inches above the floor.   (ii) This night stand light switch, the keys to operate the microwave, and the low end of the drapery rod pull are all higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) The Plaintiff tried but could not reach these items due to their height above the floor.   (iv) The action required to relocate, replace, or extend these items is easily accomplishable and able to be carried out without much difficulty or expense.

**RESTROOM IN ACCESSIBLE GUESTROOM 127**

dd.   (i) In the restroom in accessible guestroom 127, the toilet paper dispenser centerline is not between 7 and 9 inches from the front of the toilet.   (ii) The toilet paper dispenser centerline is not between 7 and 9 inches from the front of the toilet and is about 5 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.

(iii) Due to the location of this toilet paper dispenser, The Plaintiff could not reach toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

ee.  (i) In accessible guestroom 127, the restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than 18 inches.   (ii) This restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than 18 inches and is only about 4 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this lack of pull side maneuvering clearance, the Plaintiff required assistance to open this door.

ff.   (i) In the restroom in accessible guestroom 127, a shower spray unit with a hose that can be used both as a fixed-position shower head and as a hand-held shower is not provided.   (ii) In this restroom, a shower spray unit with a hose that can be used both as a fixed-position shower head and as a hand-held shower is not provided, in violation of Federal Law 2010, ADAAG§ 607.6.   (iii) The Plaintiff could not reach or adjust the fixed shower head in this restroom.   (iv) The action required to install a shower spray unit with a hose that can be used both as a fixed-position shower head and as a hand-held shower is easily accomplishable and able to be carried out without much difficulty or expense.

gg.   (i) In the restroom in accessible guestroom 127, a permanent seat at the head end of the bathtub or a removable in-tub seat capable of secure placement is not provided.   (ii) A permanent seat at the head end of the bathtub or a removable in-tub seat capable of secure placement is not provided in this restroom, in violation of Federal Law 2010, ADAAG §§ 607.3 and 610.2.   (iii) Due to the lack of a seat, among other things, the Plaintiff required

assistance to bathe.   (iv) The action required to install a proper seat in this bathtub is easily accomplishable and able to be carried out without much difficulty or expense.

hh.   (i) In the restroom in accessible guestroom 127, the end of the horizontal grab bar on the rear wall of the bathtub is more than 12 inches from the control end wall.   (ii) The end of the horizontal grab bar on the rear wall of the bathtub is more than 12 inches from the control end wall and is about 19 inches from the control end wall, in violation of Federal Law 2010, ADAAG § 607.4.2.1.   (iii) The location of this horizontal grab bar made it very difficult for the Plaintiff to use it to position himself in the bathtub.   (iv) The action required to relocate this horizontal grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

ii.   (i) In the restroom in accessible guestroom 127, the water control valve for the bathtub is not located between the centerline and the open side of the bathtub.   (ii) This water control valve for the bathtub is not located between the centerline and the open and wide side of the bathtub, in violation of Federal Law 2010, ADAAG §§ 607.5 and 608.5. (iii) The Plaintiff tried but could not operate this water control valve from his wheelchair outside of the bathtub.   (iv) The action required to relocate this water control valve is easily accomplishable and able to be carried out without much difficulty or expense.

jj.   (i) In the restroom of accessible guestroom 127, the toilet area is less than 60 inches wide.   (ii) This toilet area or compartment is less than 60 inches wide and is only about 37 inches wide, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3. (iii) Due to the width of the toilet compartment, the Plaintiff could not reach the flush control from his wheelchair.   (iv) The action required to increase the width of this toilet compartment is easily accomplishable and able to be carried out without much difficulty

or expense.

kk.(i) In the restroom in accessible guestroom 127, the rear wall grab bar is less than 36 inches long.   (ii) This rear wall grab bar is less than 36 inches long and only about 24 inches long, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) Due to its location and short length, the Plaintiff had difficulty using this rear wall grab bar to transfer himself form his wheelchair to the toilet.   (iv) The action required to replace this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

ll.     (i) In the restroom in accessible guestroom 127, the top gripping surface of the grab bar above the bath controls is higher than 36 inches above the floor.   (ii) The top gripping surface of the grab bar above the bathtub controls is higher than 36 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 609.4.   (iii) Due to the height of the gripping surface of this grab bar above the floor, the Plaintiff had difficulty using this grab bar.   (iv) The action required to relocate this grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

**POOL AREA**

mm.        (i) The elapsed time for the entrance door to the pool area to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The elapsed time for this door to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) The Plaintiff encountered this door, and due to the short time it took to close, he required assistance to enter the pool area.   (iv) The action required to adjust the door closer is easily accomplishable and able to be carried out without much difficulty or expense.

nn.   (i) The entrance to the pool area does not have signage with the International Symbol of Accessibility.   (ii) The entrance to the pool area does not have signage with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG §§ 216.6 and 703.7.2.1.   (iii) The Plaintiff observed the lack of signage with the International Symbol of Accessibility at the entrance to the pool, and it deters him from visiting Hampton Inn.   (iv) The action required to install signage with the International Symbol of Accessibility at the entrance to the pool is easily accomplishable and able to be carried out without much difficulty or expense.

oo.   (i) The force needed to open the door to the pool area is more than 5 pounds. (ii) The force required to open this door exceeds the maximum allowed force of 5 pounds (22.2 N) and is about 8 pounds, pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9.   (iii) The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he had difficulty opening this door.   (iv) The action required to reduce the force necessary to open this door is easily accomplishable and able to be carried out without much difficulty or expense.

pp.   (i) In the pool area, the wall-mounted phone is higher than 48 inches above the floor.   (ii) This phone is as high as about 58 inches above the finish floor and higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) The Plaintiff observed the height of this phone above the floor and above his reach range, and it deters him from staying at the Hampton Inn.   (iv) The action required to relocate this phone is easily accomplishable and able to be carried out without much difficulty or expense.

**LAUNDRY**

qq.   (i) The elapsed time for the entrance door to the laundry to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The elapsed time for this door to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) The Plaintiff encountered this door, and due to the short time it took to close, he required assistance to enter the laundry.   (iv) The action required to adjust the door closer is easily accomplishable and able to be carried out without much difficulty or expense.

**FITNESS CENTER**

rr.   (i) In the fitness center, the clear floor space between the treadmills is less than 30 inches.   (ii) The clear floor space between these treadmills is less than 30 inches, in violation of Federal Law 2010, ADAAG § 305.   (iii) The Plaintiff could not maneuver this wheelchair between the treadmills due to the lack of adequate clear floor space.   (iv) The action required to provide 30 inches of clear floor space between pieces of equipment and to put in place a written policy to this effect is easily accomplishable and able to be carried out without much difficulty or expense.

ss.   (i) In the fitness center, the entrance door pull side maneuvering clearance in a front approach perpendicular to the doorway is less than 60 inches.   (ii) The entrance door pull side maneuvering clearance in a front approach perpendicular to the doorway is less than 60 inches since it is blocked by the weight rack and is only about 44 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this lack of maneuvering clearance space, the Plaintiff required assistance to exit the fitness center.   (iv) The action

required to relocate the weight rack and to put in place a written policy to provide adequate door pull side maneuvering clearance is easily accomplishable and able to be carried out without much difficulty or expense.

### SIDE EXIT DOORS

tt.    (i) The force needed to open the side exit doors is more than 5 pounds.   (ii) The force required to open these doors exceeds the maximum allowed force of 5 pounds (22.2 N) and is more than about 11 pounds, pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9. (iii) The Plaintiff encountered these doors in his wheelchair, and due to the force necessary to open this door, he required assistance to open these doors.   (iv) The action required to reduce the force necessary to open these doors is easily accomplishable and able to be carried out without much difficulty or expense.

39.    All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

40.    The discriminatory violations described in paragraph 38 are not an exclusive list of the Defendant's ADA violations.   Plaintiff requires the inspection of the Defendant's places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access and to determine all of the areas of non-compliance with the Americans with Disabilities Act to which he was denied access.

41.    The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and its facilities, and have otherwise been discriminated against and damaged

by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual

Plaintiff, and all others similarly situated, will continue to suffer such discrimination, injury and

damage without the immediate relief provided by the ADA as requested herein.

42.    Defendant has discriminated against the individual by denying individuals access

to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or

accommodations of its place of public accommodation or commercial facility in violation of 42

U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.   Furthermore, the Defendant continues to

discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable

modifications in policies, practices or procedures, when such modifications are necessary to afford

all offered goods, services, facilities, privileges, advantages or accommodations to individuals with

disabilities; and by failing to take such efforts that may be necessary to ensure that no individual

with a disability is excluded, denied services, segregated or otherwise treated differently than other

individuals because of the absence of auxiliary aids and services.

43.    Plaintiff is without adequate remedy at law and is suffering irreparable harm.

Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is

warranted.

44.    Plaintiff has retained the undersigned counsel and is entitled to recover attorney's

fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR

36.505.

45.    Defendant is required to remove the existing architectural barriers to the physically

disabled when such removal is readily achievable for its place of public accommodation that have

existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an

alteration to Defendant's place of public accommodation since January 26, 1992, then the

Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

46.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

47.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Hampton Inn and the parking lot, access aisles and walkways along the accessible route, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.     That the Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.     Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and

usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

       c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

       d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## <u>DESIGNATION OF PLACE OF TRIAL</u>

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*